IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DANIEL R. and BARBARA M., individually and on behalf of I.M., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>UMR and VIVINT SOLAR, INC. GROUP BENEFIT PLAN,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:19-cv-00069<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

This case concerns a denial of benefits under the Employee Retirement Income Security Act (ERISA). Plaintiffs Daniel R., Barbara M., and I.M., bring this action against Defendants UMR and Vivint Solar, Inc. Group Benefit Plan (the Plan) claiming: (1) UMR and the Plan breached their fiduciary duties in denying benefits to I.M. (Count I), and (2) UMR and the Plan violated the Mental Health Parity and Addiction Equity Act (Parity Act) (Count II).[1] UMR filed a Motion to Dismiss,[2] arguing: (1) UMR should be dismissed as a defendant to Count I because it is an improper defendant to that claim, and (2) Count II should be dismissed because it is inadequately pled. The Plan joined in UMR's Motion to Dismiss with respect to UMR's argument concerning Count II.[3] For the reasons explained herein, UMR's Motion is DENIED.

---

[1] Dkt. 2, ¶¶ 46–58.

[2] Dkt. 8.

[3] Dkt. 22.

1

## BACKGROUND[4]

Daniel R. and Barbara M. are I.M.'s parents.[5] Daniel was a participant in the Plan and I.M. was a beneficiary under the Plan at all times relevant to this action.[6] UMR provided third party administrative services on behalf of the Plan.[7]

I.M. was enrolled on February 3, 2016, at New Haven Residential Treatment Center on the recommendation of I.M.'s therapists.[8] On February 10, 2016, UMR sent Plaintiffs a letter denying payment for I.M.'s treatment at New Haven.[9] The letter stated that payment was being denied because, according to UMR's reviewer, I.M. did not meet the medical necessity criteria for treatment at New Haven because I.M. was not suicidal, homicidal, or psychotic, and because I.M. did not have any medical or substance abuse issues.[10] The letter further stated that I.M.'s recovery could continue at a lower level of care such as outpatient care.[11]

On August 3, 2016, Daniel and Barbara submitted a level one appeal of the denial of payment for I.M.'s treatment at New Haven.[12] In their appeal letter, they disputed UMR's assertion that I.M. was not suicidal, homicidal, or psychotic.[13] They also disputed UMR's

---

[4] Because this case is before the court on a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[5] Dkt. 2 ¶ 1.

[6] Dkt. 2 ¶ 3.

[7] Dkt. 2 ¶ 2.

[8] Dkt. 2 ¶¶ 4, 23.

[9] Dkt. 2 ¶ 24.

[10] Dkt. 2 ¶ 24.

[11] Dkt. 2 ¶ 24.

[12] Dkt. 2 ¶ 25.

[13] Dkt. 2 ¶ 25.

assertion that I.M. had no medical or substance abuse issues.[14] They wrote that New Haven provided sub-acute residential care that was clinically appropriate for I.M.'s needs.[15]

On October 17, 2016, UMR sent Plaintiffs a letter upholding the denial of benefits.[16] The reviewer wrote that I.M. "did not have an acute psychosis, profound functional impairment or medication non-adherence" at the time of admission to New Haven.[17] The letter further explained that benefits were being denied because I.M. "did not have acute changes in signs and symptoms or psych-social and environment factors that cannot be assessed and treated in a less intensive setting" and therefore residential care was not medically necessary.[18]

On December 6, 2016, Daniel and Barbara submitted a level two appeal of the denial of payment for I.M.'s treatment.[19] They argued that New Haven provided sub-acute intermediate level care and therefore UMR's denial on the basis that I.M. "did not have an acute psychosis" was improper.[20] They further argued residential treatment was a covered benefit under the terms of the Plan and was not subject to requirements such as the insured suffering from acute symptoms like psychosis.[21]

On February 8, 2017, UMR sent Plaintiffs a letter again upholding the denial of benefits for I.M.'s treatment at New Haven.[22] UMR had outsourced the second appeal to AllMed, an

---

[14] Dkt. 2 ¶ 26.
[15] Dkt. 2 ¶ 28.
[16] Dkt. 2 ¶ 29.
[17] Dkt. 2 ¶ 29.
[18] Dkt. 2 ¶ 29.
[19] Dkt. 2 ¶ 30.
[20] Dkt. 2 ¶ 34.
[21] Dkt. 2 ¶ 34.
[22] Dkt. 2 ¶ 36.

external review agency.[23] In the letter, AllMed's reviewer explained the Plan's medical necessity criteria had not been met and therefore denial of benefits was proper.[24] In support, the letter noted that I.M. exhibited "no suicidal or homicidal ideation and no psychosis" at the time of admission to New Haven.[25]

On June 6, 2017, Daniel and Barbara requested the denial be evaluated by an external review agency.[26] Among other things, they argued "AllMed had improperly applied criteria meant for acute inpatient treatment, such as psychosis, or active suicidal or homicidal ideation, to the sub-acute care [I.M.] received [at New Haven]."[27] They wrote that no valid psychiatric criteria would prescribe sub-acute residential treatment for individuals in need of acute care.[28]

On September 8, 2017, the external review agency sent Plaintiffs a letter upholding the denial of benefits.[29]

Plaintiffs filed this action on January 30, 2019, and UMR filed its Motion to Dismiss on April 2, 2019.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), a court must dismiss causes of action that "fail[ ] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient

---

[23] Dkt. 2 ¶ 36.
[24] Dkt. 2 ¶ 36.
[25] Dkt. 2 ¶ 36.
[26] Dkt. 2 ¶ 37.
[27] Dkt. 2 ¶ 40.
[28] Dkt. 2 ¶ 40.
[29] Dkt. 2 ¶ 42.

4

factual matter, accepted as true, to state a claim to relief that is plausible on its face."[30] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31] When evaluating a motion to dismiss, the court "accept[s] all well-pleaded facts [in the complaint] as true and view[s] them in the light most favorable to the plaintiff."[32] However, the court will not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[33] The reviewing court is required to "draw on its judicial experience and common sense" to evaluate whether the well-pled facts state a plausible claim for relief.[34] "Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide [defendants] fair notice of what the . . . claim is and the grounds upon which it rests."[35]

---

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[31] *Id.*

[32] *Jordan-Arapahoe, LLP v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (citation omitted).

[33] *Iqbal*, 556 U.S. at 678.

[34] *Id.* at 679.

[35] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

# ANALYSIS

## I. UMR AS A PARTY TO COUNT I[36]

UMR argues it is not a proper party to Count I because, under the terms of the Plan, UMR has no obligation to pay benefits to Plaintiffs.[37] In support, UMR points to 29 U.S.C. § 1132(d)(2), which provides, "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." UMR argues that, because the Plan states UMR does not assume liability for benefits payable under the Plan, it cannot be liable to Plaintiffs on Count I as a matter of law.[38] UMR therefore argues it should be dismissed as a defendant with respect to Count I.

Plaintiffs do not dispute UMR's argument that it has no obligation to pay benefits to Plaintiffs under the terms of the Plan. Indeed, in their Opposition, Plaintiffs affirm that the Complaint does not allege UMR is liable for payment of benefits to I.M.[39] In other words, Plaintiffs and UMR seem to agree UMR has no liability under the terms of the Plan for payment

---

[36] Count I is Plaintiffs' claim for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B).

[37] Dkt. 8 at 5. The Plan, in relevant part, provides "[t]he Third Party Administrators [such as UMR] do not assume liability for benefits payable under this Plan, since they are solely claims-paying agents for the Plan Administrator." Dkt. 8-3 at 5.

"In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits . . . and documents incorporated into the complaint by reference . . . ." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.). "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks omitted). Here, portions of the Plan are attached as an exhibit to UMR's Motion to Dismiss, and the Plan is central to the Plaintiffs' claims. Accordingly, the court may consider these portions of the Plan without converting UMR's Motion into a motion for summary judgment.

[38] Dkt. 8 at 7.

[39] *See* dkt. 25 at 4 ("Independent from UMR's argument that it is not liable for payment of benefits to [I.M.], which Daniel and Barbara do not allege . . . .").

6

of benefits to Plaintiffs. Instead, Plaintiffs argue UMR should remain named as a defendant with respect to Count I because that claim asserts UMR breached its fiduciary duties to I.M.[40]

In response, UMR argues its potential status as a fiduciary is irrelevant because the Complaint seeks only recovery of benefits under Count I and third-party administrators cannot be held liable for recovery of benefits—even if they are fiduciaries.[41] In support of this position, UMR cites to a handful of district courts in the Tenth Circuit that have ruled that a plan participant or beneficiary cannot seek recovery of benefits from third-party administrators.[42] In one case cited by UMR, *Kunz v. Colorado Ass'n of Soil Conservation Districts Medical Benefits Plan*, the court held that, even if the third-party administrator was a fiduciary, the plaintiff would "be precluded from recovering the money judgment which she seeks here."[43]

Having reviewed Plaintiffs' Complaint and the parties' briefing, the court concludes it would be premature to dismiss UMR from Count I at this stage.

In short, UMR's argument is this: (1) Count I of the Complaint seeks only recovery of benefits from UMR; (2) UMR is a third-party claims administrator; (3) courts within the Tenth Circuit have said a plaintiff cannot seek recovery of benefits from a third-party claims

---

[40] Dkt. 25 at 4 (citing dkt. 2 ¶ 48). In their Opposition, Plaintiffs argue UMR acted as a "functional fiduciary" under ERISA and therefore owed certain fiduciary duties to I.M. *See* dkt. 25 at 4–7. UMR does not contest this assertion in its briefing. Instead, UMR argues its "potential status as a fiduciary" does not affect the analysis it advances in its Motion because "[w]hether UMR was a fiduciary raises an entirely different question from whether it is a proper defendant in a claim for benefits, especially where it has no liability to pay those benefits." Dkt. 8 at 8 n.4. Thus, for purposes of resolving UMR's Motion, the court will accept Plaintiffs' premise that UMR acted as a functional fiduciary here.

[41] Dkt. 29 at 3.

[42] *See* dkt. 8 at 5–6; dkt. 29 at 2–3.

[43] 840 F. Supp. 811, 813 (D. Colo. 1994); *see also Randa v. VPA, Inc.*, No. 03-1288JTM, 2004 WL 726811, at *2 (D. Kan. Mar. 31, 2004) ("Defendant VPA points to several cases holding a plaintiff cannot seek recovery based on the non-payment of benefits from a claims administrator. Defendant VPA correctly cites this principle."); *Klover v. Antero Healthplans*, 64 F. Supp. 2d 1003, 1011 (D. Colo. 1999) ("Antero, Health Plans, and Mutual of Omaha are third-party administrators or claim administrators. No provision of 29 U.S.C. § 1132(a)(1)(B) would entitle the Klovers to recover from the third party administrators for non-payment of benefits.")

7

administrator; and (4) therefore, UMR is an improper defendant to Count I because there is no relief that could be sought against UMR on that claim.

But UMR's reading of Count I sells the Complaint short. While the Complaint does seek relief in the form of recovery of benefits,[44] Count I also alleges UMR breached its fiduciary duties to I.M. when it "failed to comply with [its] obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in I.M.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of [I.M.'s] claims."[45] And the Complaint's prayer for relief seeks any "further relief as the Court deems just and proper."[46] Thus, while it may be fair to characterize Count I as primarily seeking relief in the form of a money judgment to recover unpaid benefits, the language of the Complaint does not foreclose the court from ordering other relief related to Count I.[47]

For example, the court could eventually conclude UMR breached its fiduciary duty in failing to provide a full and fair review of I.M.'s claims, as Count I alleges.[48] If the court reached such a conclusion, the court could order UMR to reprocess I.M.'s claims in a way that affords Plaintiffs a full and fair review.[49] In other words, it is possible the court could order

---

[44] *See, e.g.*, dkt. 2 ¶ 8 ("The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. § 1132(a)(1)(B) . . . ."); dkt. 2 at 14 ("Plaintiffs seek relief as follows: Judgment in the total amount that is owed for [I.M.'s] medically necessary treatment at New Haven . . . .").

[45] Dkt. 2 ¶ 48.

[46] Dkt. 2 at 14.

[47] *Cf. DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006) ("Generally speaking, when a reviewing court concludes that a plan administrator has acted arbitrarily and capriciously in handling a claim for benefits, it 'can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits.'"); *Michael D. v. Anthem Health Plans of Ky., Inc.*, 369 F. Supp. 3d 1159, 1178–79 (remanding to plan administrator for further proceedings in case in which plaintiffs sought "retroactive reinstatement of benefits, pre-judgment interest, and attorney's fees," but complaint did not explicitly pray for relief in form of remand).

[48] *See* dkt. 2 ¶ 48.

[49] *See, e.g., Michael D.*, 369 F. Supp. 3d at 1179 (remanding case to plan administrator for proceedings consistent with the court's order).

relief based on Count I that would take the form of something other than a monetary judgment. As the party against which such relief would be ordered, it would be necessary for UMR to be a party to the action.[50]

The authority cited in Plaintiffs' Opposition, and parroted in UMR's Reply, also suggests as much. In *Randa v. VPA Inc.*, the court addressed defendant VPA's argument that it should be dismissed as a defendant because a section 1132(a)(1) claim can only be brought against the plan.[51] The court ultimately rejected VPA's argument, concluding VPA was properly named as a defendant to the plaintiff's denial of benefits claim.[52] The *Randa* court began its analysis by noting "VPA correctly cite[d] t[he] principle" that "a plaintiff cannot seek recovery based on the non-payment of benefits from a claim administrator."[53] The court continued, however, to

---

[50] *See* Fed. R. Civ. P. 19(a) ("A person . . . must be joined if: in that person's absence, the court cannot accord complete relief among existing parties.").

[51] No. 03-1288JTM, 2004 WL 726811, at *1 (D. Kan. Mar. 31, 2004).

[52] *Id.* at *2.

[53] *Id.* As explained above, UMR's briefing relies heavily on a handful of district court cases from this circuit in which courts have cited this principle in dismissing third-party administrators from recovery of benefits claims. *See* dkt. 8 at 5–6. Plaintiffs' briefing does not address this argument, choosing instead to focus on Plaintiffs' own argument that UMR was a functional fiduciary. *See* dkt. 25 at 4–7. And, ultimately, the court's disposition of UMR's Motion does not depend on the resolution of this issue.

The court does, however, note the viability of the principle cited in *Randa*, *Klover*, and *Kunz*—that third-party administrators are not proper defendants to recovery of benefits claims—has arguably been called into question by subsequent Tenth Circuit precedent. In *Geddes v. United Staffing Alliance Employee Medical Plan*—a case which neither party cites—the Tenth Circuit explained "[t]he language of 29 U.S.C. § 1132(d)(2) allows beneficiaries to bring claims against the plan entity, *and possibly against plan administrators and named fiduciaries as well*." 469 F.3d 919, 931 (10th Cir. 2006) (emphasis added). The *Geddes* court noted a split of authority amongst circuits as to whether beneficiaries may bring claims against named fiduciaries before concluding the plaintiffs in that case could not recover a money judgment against a non-fiduciary third-party administrator. *Id.* at 931 ("The circuits are divided on whether beneficiaries may bring claims against plan administrators and named fiduciaries in addition to the plan entity. But no circuit holds that a non-fiduciary such as Everest is liable under the terms of 29 U.S.C. § 1132(d)(2).").

*Geddes* did not decide the issue of whether *fiduciary* third-party administrators can be liable for a recovery of benefits. Nor does *Geddes* address the relationship between 29 U.S.C. § 1132(d)(2) and *functional* fiduciaries, as Plaintiffs argue UMR is here. *Geddes* does, however, seem to cast doubt on the blanket proposition cited in *Randa*, *Klover*, and *Kunz* that plaintiffs can never seek recovery of benefits from third-party administrators. Because the court resolves this Motion on different grounds, it need not determine if or how *Geddes* affects the case at hand. Instead, the court simply flags this as a potentially unsettled question of law in this circuit.

9

explain that, "[i]f benefits are not awarded by the court, plaintiff seeks an order requiring VPA to follow proper procedures in determining her claim."[54] And for that reason, the court concluded, "the principle cited by defendant VPA does not mandate its dismissal from the case."[55] In other words, the third-party claims administrator in *Randa* was a proper defendant because the plaintiff was seeking relief—an order requiring VPA to follow certain procedures—that could be directly enforced against the claims administrator.[56]

Because the court may ultimately order relief here that could—and perhaps must—be directly enforced against UMR, dismissal of UMR with respect to Count I would be premature at this time.

## II. PLAINTIFFS' PARITY ACT CLAIM

### A. Parity Act Overview

Congress enacted the Mental Health Parity Act (MHPA) in 1996, requiring group health plans to impose the same "aggregate lifetime and annual dollar limits for mental health benefits and medical and surgical benefits."[57] Congress amended the MHPA in 2008, when it passed the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008.[58]

As amended, the Parity Act is designed "to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for

---

[54] *Id.*

[55] *Id.*

[56] In its Reply, UMR does not contest the holding in *Randa* that third-party administrators may be proper defendants to section 1132(a)(1)(B) claims in which the plaintiff seeks relief such as an order requiring the third-party administrator to reprocess a claim. Indeed, UMR implicitly endorses this view in its Reply. Dkt. 29 at 3 ("Because Plaintiffs seek *only* recovery of benefits under Count I, *Randa* . . . support[s] dismissal of UMR from Count I.") (emphasis added). Instead, UMR hangs it hat on the argument that the only relief Plaintiffs seek with respect Count I is a monetary judgment for recovery of benefits.

[57] *Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1259 (D. Utah 2016) (citation omitted).

[58] *Id.*

10

medical and surgical conditions in employer-sponsored group health plans."[59] In general terms, a health plan that provides medical and surgical benefits as well as mental health or substance abuse benefits "cannot impose more restrictions on the latter than it imposes on the former."[60] Relevant here, the Parity Act prohibits insurers from imposing "treatment limitations" on mental health or substance abuse claims that are more stringent than the treatment limitations imposed on medical or surgical claims.[61]

Treatment limitations can come in one of two forms: quantitative and nonquantitative.[62] Quantitative treatment limitations are expressed numerically and would include treatment limitations such as "50 outpatient visits per year."[63] Nonquantitative treatment limitations are non-numerical treatment limitations that "otherwise limit the scope or duration of benefits for treatment under a plan."[64] With respect to nonquantitative treatment limitations, the Parity Act's implementing regulations provide that a plan:

> may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless . . . any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors

---

[59] *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016).

[60] *Michael W. v. United Behavioral Health*, No. 2:18-cv-00818, 2019 WL 4736937, at *16 (D. Utah Sept. 27, 2019) (citing 29 U.S.C. § 1185a(a)(3)(A)).

[61] *See Michael D.,* 369 F. Supp. 3d at 1174; *see also* 29 C.F.R. § 2590.712(c)(2)(i) ("A group health plan (or health insurance coverage offered by an issuer in connection with a group health plan) that provides both medical/surgical benefits and mental health or substance use disorder benefits may not apply any financial requirement or treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant financial requirement or treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification.").

[62] *See* 29 C.F.R. § 2590.712(a).

[63] *Id.*

[64] *Id.*

used in applying the limitation with respect to medical surgical/benefits in the classification.⁶⁵

In other words, an insurer violates the Parity Act if it employs "a nonquantitative limitation for mental health treatment that is more restrictive than the nonquantitative limitation applied to medical health treatments."⁶⁶

Parity Act violations can be alleged in the form of facial challenges or as-applied challenges.⁶⁷ A facial challenge is based on the express terms of the plan, while an as-applied challenge is based on the plan administrator's application of the plan.⁶⁸

To succeed on a Parity Act claim, a plaintiff must show: "(1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared."⁶⁹ Generally speaking, the third and fourth prongs of this test present a more substantial pleading challenge for parties than the first two prongs.⁷⁰ Accordingly, some courts have distilled the four-prong test into a two-part test: "To survive the dismissal of a Parity Act claim, a plaintiff must allege a

---

⁶⁵ *Id.* § 2590.712(c)(4)(i).

⁶⁶ *David S. v. United Healthcare Ins. Co.*, No. 2:18-CV-00803, 2019 WL 4393341, at *3 (D. Utah Sept. 13, 2019).

⁶⁷ *Id.*

⁶⁸ *J.L. v. Anthem Blue Cross*, No. 2:18-cv-00671, 2019 WL 4393318, at *2 (D. Utah Sept. 13, 2019).

⁶⁹ *David S.*, 2019 WL 4393341, at *4 (quoting *Michael D.*, 369 F. Supp. 3d at 1174) (internal quotation marks omitted). There is no binding Tenth Circuit precedent on the standard required to plead a Parity Act violation. Accordingly, courts in this jurisdiction and others have applied a number of related, but distinct standards. *See Michael W.*, 2019 WL 4736937, at *17–18 (collecting cases). That said, the four-part test described above appears to be the predominant standard. *See id.*, at *17. And because the parties in this case proceed under a variation of the four-part test, the court chooses to proceed under that standard.

⁷⁰ *David S.*, 2019 WL 4393341, at *4.

medical or surgical analogue that the plan treats differently than the disputed mental health or substance abuse services."[71]

## B. Plaintiffs' Parity Act Claim

UMR argues Plaintiffs have failed to plead sufficient facts to support Count II.[72] Specifically, UMR argues "Plaintiffs fail to identify analogous medical or surgical services in the same classification [as the treatment I.M. received at New Haven], and they fail to allege facts identifying a disparity in the processes, strategies, standards, or other factors used in developing and applying the limitation for an analogous comparator."[73] The court disagrees.

Plaintiffs allege just enough for the court to infer Defendants applied the Plan in a manner that violates the Parity Act. First, Plaintiffs adequately allege I.M.'s sub-acute residential treatment at New Haven is analogous to medical/surgical treatment at a skilled nursing or rehabilitation facility.[74] This allegation identifies the medical analogue the Plan treats differently than the disputed mental health treatments: skilled nursing or rehabilitation facilities. Second, Plaintiffs allege Defendants applied *acute* treatment limitations—at least in part—to evaluate I.M.'s *sub-acute* mental health and substance abuse treatment at New Haven.[75] Plaintiffs further allege such acute limitations would not be applied to sub-acute care at skilled nursing or rehabilitation facilities.[76] These allegations identify acute nonquantitative treatment limitations as the offending treatment limitations. Plaintiffs allege Defendants applied these

---

[71] *Id.* (quoting *Timothy D. v. Aetna Health & Life Ins. Co.*, No. 2:18-CV-753, 2019 WL 2493449, at *3 (D. Utah June 14, 2019)) (internal quotation marks omitted).

[72] Count II is Plaintiffs' claim for Defendants' alleged violation of the Parity Act.

[73] Dkt. 8 at 11–12.

[74] Dkt. 2 ¶ 54. *See David S.*, 2019 WL 4393341, at *4 ("Plaintiffs adequately allege S.S.'s residential mental health treatment at Open Sky and Catalyst is analogous to medical health treatment at a skilled nursing facility.").

[75] Dkt. 2 ¶¶ 34, 40, 54–56.

[76] Dkt. 2 ¶¶ 54–56.

offending treatment limitations to determine I.M.'s care at New Haven was not medically necessary, but Defendants would not have applied the same treatment limitations to care received at a skilled nursing or rehabilitation facility. This as-applied challenge asserts Defendants handled mental health and medical health treatments unequally. Given the allegations in the Complaint, it is plausible that Defendants applied more stringent acute treatment limitations to I.M.'s claims for sub-acute mental health and substance abuse treatment than they would have applied to sub-acute treatment at a skilled nursing or rehabilitation facility. Therefore, Plaintiffs have adequately alleged an as-applied Parity Act challenge with respect to I.M.'s treatment at New Haven.[77]

## CONCLUSION

For the reasons stated above, UMR's Motion to Dismiss[78] and the Plan's Motion[79] joining UMR's Motion to Dismiss are DENIED.

**SO ORDERED** this 12th day of March, 2020.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[77] *See David S.*, 2019 WL 4393341 at *4 (D. Utah Sept. 13, 2019) (finding plaintiff adequately alleged as-applied challenge under similar circumstances).

[78] Dkt. 8.

[79] Dkt. 22.